BARRY J. PORTMAN
Federal Public Defender
STEVEN G. KALAR
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Dang

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MINH DANG,<br><br>    Defendant. | No. CR 07-0641-01 SI<br><br>DEFENDANT'S<br>SENTENCING<br>MEMORANDUM<br><br><br><br>**Sentencing Hearing Date**:<br>May 16, 2008 at 11:00 a.m. |

**Introduction**

The parties and the Probation Office jointly recommend an in-guideline sentence in this matter: eight months of custody, and two months in a half-way house, in Zone C of the guideline table. This jointly-recommended sentence satisfies the goals of the Sentencing Reform Act, 18 USC § 3553. It also justly reflects the offense conduct and Mr. Dang's criminal history, while encouraging rehabilitation for this young defendant.

**Objections**

The sole outstanding objection to the presentence report relates to discussion of alleged marijuana activity in the "Acceptance of Responsibility" section. The defense withdraws this objection.

**Discussion**

This is an interesting case, with competing equities in play. On the one hand, one can fairly describe this as an atypical federal felony prosecution. The crime at issue was an opportunistic blackmailing attempt directed at a single individual, with no threats of violence, and with no actual money ever exchanging hands. While certainly a crime, it is an offense one may expect to see prosecuted in state court.

To be fair, however, the impact of Mr. Dang's crime on the victim and the victim's girlfriend are very real. The images on the stolen videotape were intensely personal, and having these very private scenes discussed and shown to one's professional colleagues was undoubtably traumatic.

The sentence recommended by Probation Officer Searles strikes a fair balance between these equities. Notably, in Zone C of the sentencing guidelines, Mr. Dang could conceivably serve a true "split" sentence of five months in a half-way house, and five months in custody. In recognition of the seriousness of the offense, the Probation Office recommends a split that heavily favors a custodial term: eight months of jail, and two months of community confinement. Mr. Dang's acquiesence to this lopsided proposed sentence is an illustration of his early and complete acceptance of responsibility.

The Presentence Report devotes an unusually long discussion to Mr. Dang's unusually complete and thorough acceptance of responsibility. *PSR* at 11-13, ¶¶ 31- 37. Officer Searles correctly emphasizes Mr. Dang's early, and complete, acknowledgment of his guilt. Indeed, this acceptance (before the defendant was appointed counsel) actually verges on the edge of active cooperation with the federal government. *See id*. at 11 ¶ 33, 12 ¶ 34 (discussing information provided to federal agents during early, pre-counsel interview).

While the government has not made a Section 5K departure for substantial

assistance,[1] the Probation Office has fairly emphasized that Mr. Dang's very early candor with the federal agents far exceeds that of most defendants. That unusually complete and early acceptance of responsibility strongly supports Officer Searles' recommended sentence.

This young defendant's acknowledgment of guilt continued into proceedings before this Court. Mr. Dang entered a plea of guilt very early in the case, did not file motions, and did not seek a trial date. Mr. Dang's early plea of guilt spared the victims in the case from the further embarrassment and humiliation of court proceedings. Notably, although it was Rule 16 discovery the defense never requested – and the government never disclosed – the actual stolen tape itself.

Mr. Dang's acceptance of responsibility is important, because it bodes well for his chances of rehabilitation. While Mr. Dang has committed crimes, he is not a true criminal. He is an earnest young man with computer skills who is anxious to put the mistakes of his youth behind him and to get his life on track. When his federal sentence is complete, he hopes to "complete his college education and major in international business." *Id.* at 20 ¶ 75. Abandoned by his mother, and with his father in Vietnam, Mr. Dang is the only remaining family contact and support for his younger brother. *Id.* at 19 ¶ 68, 70. He feels great responsibility and affection for his brother, and is committed to gaining employment and creating some stability for this small family when released.

Mr. Dang's unusually close relationship with his father will also be a stabilizing influence when he completes his federal sentence. As reported in the PSR, Mr. Dang's father recently relocated to Vietnam. Mr. Dang is particularly close to his father, who raised and supported the two boys as a single parent after they were abandoned by their mother. As Mr. Dang puts it, "my father is my life."

Roughly two weeks ago, Mr. Dang's father was in a motorcycle accident in Vietnam and literally broke his neck. He had surgery on two bones on his neck yesterday,

---

[1] The defense does not begrudge the lack of a Section 5K motion, because Mr. Dang did not formally cooperate with the federal government after he was appointed counsel.

*Dang*, CR 07-0641-01 SI
DEF. SENT. MEM.                      3

May 7. While Mr. Dang's father seems to have done well in the surgery, this experience has been excruciating for the young defendant. His father has a business in Vietnam, and but for this case Mr. Dang would go to Vietnam to help his father during this crisis. Mr. Dang's responsibilities to his father and to his younger brother, and the impact that this case has had upon this small family, has served as the "wake-up" call the young man needed.

The split sentence jointly recommended by the parties will punish Mr. Dang's behavior and will send a strong message, while still providing an opportunity for rehabilitation and family reunification.

**Conclusion**

This case is, perhaps, atypical. It involves a young defendant who fully and completely admitted his criminal conduct early, and repeatedly. The case was resolved, quickly, through amicable discussions between opposing counsel, without the involvement of a settlement judge and without acrimonious motions or extensive litigation. The negotiated disposition is a reasonable, in-guideline proposal endorsed by the Office of Probation. Finally, and most importantly, it seems clear that this conviction will mark the end of Mr. Dang's (often-botched) criminal career and the beginning of a law-abiding life. For each of these reasons the jointly-urged sentence is a just result, comports with the goals of the Sentencing Reform Act, and should be adopted by this Court.

Dated:  May 8, 2008

                        Respectfully submitted,

                        BARRY J. PORTMAN
                        Federal Public Defender

                        /s

                        STEVEN G. KALAR
                        Assistant Federal Public Defender